## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VAIL VALLEY MEDICAL CENTER )
181 West Meadow Drive )
Vail, CO 81657 )
           and )
            ) Civil No.: _____
KALEIDA HEALTH )
100 High Street )
Buffalo, NY 14203 )
            )
        Plaintiffs, )
            )
        v. )
            )
MICHAEL O. LEAVITT, Secretary, )
United States Department of Health and Human Services )
200 Independence Avenue, S.W. )
Washington, D.C. 20201, )
            )
        Defendant. )
_____ )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
## AND SUMS DUE UNDER THE MEDICARE ACT

1.     This action is brought by Vail Valley Medical Center and Kaleida Health,

hospitals seeking reimbursement from the federal Medicare program for the reasonable costs of

outpatient hospital services they furnished to Medicare beneficiaries in 1999 and most of the year

2000. Defendant, the Secretary of the Department of Health and Human Services ("Secretary"),

has refused to reimburse the plaintiff hospitals for Medicare's fair share of the reasonable costs

of those services based on the application of certain payment limitations called the "blended

payment rate." Congress, however, made the blended payment rate limits inapplicable to

services furnished to Medicare beneficiaries on or after January 1, 1999. Moreover, the

Secretary did not announce until after the fact – in April 2000 – that he intended to apply the blended payment rate limits to services furnished in 1999 and 2000, even after those limitations were terminated by law.

2.      The plaintiff hospitals, therefore, seek an order declaring the Secretary's application of the blended payment rate limits to services furnished after 1998 invalid and compelling the Secretary to reimburse the hospitals for the difference between the reasonable costs they incurred in furnishing these services – as already determined by the Secretary through the Medicare cost reporting process prescribed by his own rules – and the lower blended payment rates that were actually paid to the hospitals for the outpatient services in question.  In addition, the hospitals seek interest on that sum as calculated in accordance with 42 U.S.C. § 1395oo(f).

## I.      JURISDICTION AND VENUE

3.      This action arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*

4.      This Court has jurisdiction under 42 U.S.C. § 1395oo(f).

5.      Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1).

## II.      PARTIES

### A.      Plaintiffs

6.      The plaintiff hospitals in this action are Vail Valley Medical Center ("Vail Valley"), Medicare Provider No. 06-0096, and Kaleida Health, ("Kaleida") Medicare Provider No. 33-0005.  Before June 2, 1999, Kaleida was known as CGF Health System.

7.      The plaintiff hospitals filed appeals to the Provider Reimbursement Review Board ("PRRB" or "Board") challenging the application of the blended payment rate limits to services

furnished to Medicare outpatients on or after January 1, 1999. In each administrative appeal identified in paragraphs 58-61 below, the PRRB granted the hospitals' petitions for expedited judicial review of this issue pursuant to 42 U.S.C. § 1395oo(f). Pursuant to those decisions by the PRRB, the plaintiff hospitals bring this action for judicial review of the Secretary's application of the blended payment rate limits to services furnished during the fiscal periods identified in paragraph 53 below.

**B.    Defendant**

8.    Defendant Michael O. Leavitt ("the Secretary") is the Secretary of the United States Department of Health and Human Services ("HHS"), the federal agency that administers the Medicare program. References to the Secretary herein are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

9.    The Centers for Medicare and Medicaid Services ("CMS") is a component of HHS. CMS was formerly known as the Health Care Financing Administration ("HCFA"). CMS is responsible for day-to-day operation and administration of the Medicare program.

### III. STATUTORY AND REGULATORY BACKGROUND

**A.    Overview of the Medicare Program and Medicare Part B**

10.    Congress enacted the Medicare program in 1965 to establish health insurance for the aged and disabled. Social Security Amendments of 1965, Pub. L. No. 89-97, § 102(a).

11.    Since its inception in 1965, the Medicare program has encompassed two separate insurance programs that are established in Parts A and B of Title XVIII of the Social Security Act (the "Act").

3

12.    Part A of Title XVIII of the Act, 42 U.S.C. §§ 1395c -1395i-5, covers hospital services furnished to inpatients.  See 42 U.S.C. § 1395d(a)(1).

13.    Part B of Title XVIII of the Act, 42 U.S.C. §§ 1395j-1395w-4, covers hospital outpatient services.

14.    Under the health insurance programs established in Parts A and B, an eligible Medicare beneficiary is entitled to have payment made on his or her behalf for, *inter alia*, inpatient and outpatient hospital services provided to him or her by a hospital participating in the Medicare program as a provider of services.  See 42 U.S.C. §§ 1395d(a)(1).

15.    The Secretary, through fiscal intermediaries under contracts, makes payment directly to participating providers for covered services furnished to Medicare beneficiaries.  See 42 U.S.C. §§ 1395h, 1395kk-l.

16.    The issue in this case concerns the payments owed to the plaintiff hospitals for outpatient hospital services covered under Part B.

17.    Section 1832 of the Act, 42 U.S.C. § 1395k, specifies the items and services that are covered under Medicare Part B.

18.    Section 1833 of the Act, 42 U.S.C. § 1395*l* specifies the amount of Medicare payment for items and services that are covered under Medicare Part B.

**B.    Medicare Reasonable Cost Reimbursement for Hospital Outpatient Services**

19.    At the inception of the Medicare program in 1965, hospitals were reimbursed for the reasonable costs of all covered services they furnished to Medicare beneficiaries, including both inpatient services covered under Part A of Title XVIII of the Act and outpatient services covered under Part B of Title XVIII of the Act.  See Social Security Amendments of 1965, Pub.

L. No. 89-97, § 102(a), enacting Social Security Act §§ 1814(b) and 1833(b)(2)(A), codified at 42 U.S.C. §§ 1395f(b) and 1395*l*(b)(2)(A).

20.    The reasonable cost reimbursement system remains the general rule governing Medicare payment for services furnished by hospitals, except where Congress has expressly authorized payment on some other basis:

> Medicare is generally required, under section 1814(b) of the Act (for services covered under Part A) and under section 1833(a)(2) of the Act (for services covered under Part B) to pay for services furnished by providers on the basis of reasonable costs as defined in section 1861(v) of the Act, or the provider's customary charges for those services, if lower. Regulations implementing section 1861(v) are found generally in this part beginning at § 413.5.

42 C.F.R. § 413.1(b).

21.    The term "reasonable cost" is defined in Section 1861(v) of the Act, 42 U.S.C. § 1395x(v).

22.    The intent of the statutory provision for payment of "reasonable cost," as defined in Section 1861(v) of the Act, is to meet the actual cost incurred in the efficient delivery of necessary health services. 42 U.S.C. § 1395x(v)(1)(A). See also 42 C.F.R. §§ 413.5(a), 413.53(a).

23.    The statutory definition of "reasonable cost" directs the Secretary to ensure that the methods of determining reasonable cost do not shift the costs of services furnished to Medicare beneficiaries to other patients (and *vice-versa*). 42 U.S.C. § 1395x(v)(1)(A) (last sentence). See also 42 C.F.R. § 413.9(b)(1). This provision is referred to as the prohibition on cross-subsidization. See, e.g., The Kidney Center of Hollywood v. Shalala, 133 F.3d 78, 82 (D.C. 1998).

24.    In the absence of an express statutory provision for payment of some amount less than reasonable cost, courts have consistently enforced the statutory prohibition on cross-

subsidization in overturning Medicare payment policies that deny payment to health care

providers for the reasonable costs of services furnished to Medicare patients. See e.g., St. Mary

of Nazareth Hospital Center. v. Heckler, 760 F.2d 1311, 1315 (D.C. Cir. 1985).

      25.    The statute's definition of "reasonable cost" contains a number of express

limitations on the amounts considered reasonable.

      26.    For example, during the period at issue, the statute's definition of "reasonable

cost" included a 10% and a 5.8% cost reduction factor for the capital-related costs and operating

costs, respectively, of hospital outpatient services.  42 U.S.C. § 1395x(v)(1)(S)(ii).

      27.    Congress twice extended the 10% and 5.8% cost reduction factors (in 1997 and

1999) to remain in effect throughout calendar year 1999 and up to implementation of a

prospective payment system for hospital outpatient services on August 1, 2000.  See Balanced

Budget Act of 1997, Pub. L. No. 105-33 ("BBA") § 4522 and Balanced Budget Refinement Act

of 1999, Pub. L. No. 106-113 ("BBRA") § 201(k) (amending 42 U.S.C. § 1395x(v)(1)(S)(ii)(I)-

(II)).

## C.    The Blended Payment Rate Limits for Certain Hospital Outpatient Services

      28.    Since 1965, Congress has amended the Part B payment provision in Section 1833

of the Act, 42 U.S.C. § 1395l, several times to authorize payment of less than the reasonable cost

(as defined in the statute) of certain hospital outpatient services.

      29.    Beginning in 1986, Congress enacted a series of amendments to payment

provision in Section 1833 of the Act, 42 U.S.C. § 1395l, to limit payment for the three specific

types of hospital outpatient services at issue in this case:  ambulatory surgical center ("ASC")

services, outpatient radiology services and other outpatient diagnostic procedures. See Omnibus

Budget Reconciliation Act of 1986, Pub. L. 99-509 ("OBRA '86") § 9343(a) (amending § 1833

of the Act to establish a blended payment rate limit for hospital ASC services); Omnibus Budget

Reconciliation Act of 1987, P.L. 100-203 ("OBRA '87") § 4066 (amending § 1833 of the Act to establish blended payment rate limits for outpatient radiology services and certain other diagnostic procedures).

30.     As amended, the statute provided for payment of the lower of a hospital's customary charges, its reasonable costs, or blended payment rates established for each of these three types of hospital outpatient service. See 42 U.S.C. §§ 1395*l*(i)(3)(A), 1395*l*(n)(1)(A).

31.     The blended payment rates consisted of a portion of a hospital's reasonable cost and a portion of a standard fee schedule amount which is not based on a hospital's own cost of services furnished. See 42 U.S.C. §§ 1395*l*(i)(3)(B), 1395*l*(n)(1)(B).

32.     Regulations governing the blended payment rate limits are set forth at 42 C.F.R. §§ 413.118 and 413.122.

**D.     The Prospective Payment System for Hospital Outpatient Services and Congressional Termination of the Blended Payment Rates**

33.     Section 4523(a) of the BBA amended Section 1833 of the Act by adding a new subsection (t), 42 U.S.C. § 1395*l*(t) which required the Secretary to implement a prospective payment system for hospital outpatient services designated by the Secretary, beginning with services furnished in 1999.  BBA § 4523(a).

34.     Section 4522 of the BBA also extended the 10% and 5.8% cost reduction factors in the statutory definition of reasonable cost "through 1999 and during fiscal year 2000 before January 1, 2000."

35.     Section 4523(d) of the BBA made additional conforming amendments to Section 1833 of the Act, terminating all other payment limits for hospital outpatient services, including the blended payment rate limits, effective January 1, 1999.

36.    Although the statutory authority for the blended payment rate limits was terminated as of December 31, 1998, the regulations governing the blended payment rate limits, at 42 C.F.R. §§ 413.118 and 413.122, remain in the Code of Federal Regulations.

37.    In 1998, the Secretary published notice of a proposed rule to implement the prospective payment system for hospital outpatient services.  63 Fed. Reg. 47552 (Sept. 8, 1998).

38.    In the preamble to the 1998 proposed rule, the Secretary gave notice that CMS would not implement the prospective payment system for hospital outpatient services before calendar year 2000.  63 Fed. Reg. 47552, 47554.

39.    In the preamble to the 1998 proposed rule, the Secretary acknowledged that Congress had extended the 10% and 5.8% cost reduction factors for capital-related costs and operating costs of hospital outpatient services, 63 Fed. Reg. 47554-55, but the Secretary did not address how CMS intended to pay for hospital outpatient services furnished on or after January 1, 1999 and before implementation of the prospective payment system for hospital outpatient services.

40.    Soon after the Secretary published notice of the 1998 proposed rule, Congress further extended the 10% and 5.8% reasonable cost reduction factors beyond 1999.  BBRA § 201(k) (amending 42 U.S.C. § 1395x(v)(1)(S)(ii)(I)-(II)).

41.    As amended by the BBRA, the 5.8% and 10% cost reduction factors in the statute's definition of the reasonable cost of hospital outpatient services continued in effect with respect to the capital-related and operating costs of hospital outpatient services "until the first date that the prospective payment system under section 1833(t) is implemented." BBRA § 201(k) (amending 42 U.S.C. § 1395x(v)(1)(S)(ii)(I)-(II)).

8

42.    In April 2000, the Secretary published a final rule implementing the prospective payment system for hospital outpatient services. 65 Fed. Reg. 18434 (Apr. 7, 2000).

43.    In the preamble to the April 2000 rule, the Secretary indicated that the blended payment rate limits would be applied to reimburse hospitals for the costs of ASC services, outpatient radiology and other outpatient diagnostic procedures furnished from January 1, 1999 through the later effective date of the outpatient prospective payment system. 65 Fed. Reg. 18489-90.

44.    In June 2000, the Secretary published a rule making the outpatient prospective payment system effective on August 1, 2000. 65 Fed. Reg. 40535, 40535 (June 30, 2000).

**E.    Medicare Cost Report and Appeals Process**

45.    Medicare payments to hospitals are determined by fiscal intermediaries, private firms (usually insurance companies) that contract with the Secretary.

46.    After the close of each fiscal year, a hospital submits a cost report to a fiscal intermediary to identify the hospital's reasonable costs and the portion of those costs that are allocable to Medicare patients for that fiscal year, referred to as the cost reporting period. See In re Medicare Reimbursement Litigation, Baystate Health System v. Thompson, 309 F.Supp.2d 89, 92 (D.D.C. 2004); 42 C.F.R. § 413.20(b). The intermediary analyzes the cost report and issues a Notice of Program Reimbursement, or "NPR," that informs the hospital of the intermediary's final determination of the hospital's Medicare reimbursement for the cost reporting period. Baystate Health System, 309 F.Supp.2d at 92; see also 42 C.F.R. § 405.1803.

47.    A hospital may appeal to the PRRB if the hospital is dissatisfied with an intermediary's determination in an NPR as to the amount of Medicare payment due the hospital for a cost reporting period. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.

48.    The PRRB is an administrative tribunal comprised of five members appointed by the Secretary.  42 U.S.C. § 1395oo(h).  The PRRB must comply with "all provisions of title XVIII of the Act" and the Secretary's "regulations issued thereunder."  42 C.F.R. § 405.1867.

49.    Under the statute governing appeals to the PRRB, a hospital may obtain expedited judicial review of any action that involves a question of law or regulations relevant to the matters in controversy whenever the Board determines ... that it is without authority to decide the question."  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877.

50.    The statute provides that for judicial review shall be "pursuant to the applicable provisions under" the Administrative Procedure Act ("APA").  42 U.S.C. § 1395oo(f)(1).

51.    The applicable provisions under the APA provide that the reviewing court may set aside agency action that exceeds an agency's statutory authority, is contrary to law, arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with law.  5 U.S.C. § 706.

## IV.  FACTS SPECIFIC TO THIS CASE

52.    Each of the plaintiff hospitals participated in the Medicare program as a provider of hospital services during the period at issue.

53.    Vail Valley's fiscal years ending October 31, 1999 and October 31, 2000 each included a portion of the period beginning on January 1, 1999, when the blended payment rate limits were terminated, and ending before August 1, 2000, when the outpatient prospective payment system became effective.  Kaleida's fiscal years ending December 31, 1999 and December 31, 2000 each included a portion of the period beginning on January 1, 1999, when the blended payment rate limits were terminated, and ending before August 1, 2000, when the outpatient prospective payment system became effective.

54.     For each of the fiscal years identified in paragraph 53 above, the respective

plaintiff hospital filed a cost report with its Medicare fiscal intermediary after the end of the

fiscal year.

55.     Each of the cost reports submitted by the plaintiff hospitals for the fiscal years

identified in paragraph 53 above identified the reasonable cost of outpatient hospital services

furnished to Medicare beneficiaries and the blended payment rate limits applicable to some of

those services.

56.     For each of the fiscal years identified in paragraph 53 above, the hospital's

Medicare fiscal intermediary issued a final payment determination in an NPR, and each of those

NPRs was issued one to two years, or more, after the hospital filed its cost report.

57.     For each of the hospital fiscal years identified in paragraph 53 above, the fiscal

intermediary's final payment determination in the NPR applied the blended payment rate limits

to deny the hospital reimbursement for the reasonable costs of outpatient services that exceeded

those limits.

58.     In an appeal to the PRRB for its fiscal year ending October 31, 1999, assigned

PRRB case number 05-0146, Vail Valley appealed the fiscal intermediary's application of the

blended payment rate limits to deny reimbursement for the full reasonable cost of outpatient

services furnished to Medicare patients on or after January 1, 1999 and before August 1, 2000.

By letter dated April 1, 2008, received by the representative for the hospital on April 3, 2008, the

PRRB granted Vail Valley's request for expedited judicial review of the application of the

blended payment rate limits.

59.     In an appeal to the PRRB for its fiscal year ending October 31, 2000, assigned

PRRB case number 05-0144, Vail Valley appealed the fiscal intermediary's application of the

11

blended payment rate limits to deny reimbursement for the full reasonable cost of outpatient services furnished to Medicare patients on or after January 1, 1999 and before August 1, 2000. By letter dated April 1, 2008, received by the representative for the hospital on April 3, 2008, the PRRB granted Vail Valley's request for expedited judicial review of the application of the blended payment rate limits.

60.    In an appeal to the PRRB for its fiscal year ending December 31, 1999, assigned PRRB case number 08-1475, Kaleida appealed the fiscal intermediary's application of the blended payment rate limits to deny reimbursement for the full reasonable cost of outpatient services furnished to Medicare patients on or after January 1, 1999 and before August 1, 2000. By letter dated May 22, 2008, the PRRB granted Kaleida's request for expedited judicial review of the application of the blended payment rate limits.

61.    In an appeal to the PRRB for its fiscal year ending December 31, 2000, assigned PRRB case number 08-1476, Kaleida appealed the fiscal intermediary's application of the blended payment rate limits to deny reimbursement for the full reasonable cost of outpatient services furnished to Medicare patients on or after January 1, 1999 and before August 1, 2000. By letter dated May 22, 2008, the PRRB granted Kaleida's request for expedited judicial review of the application of the blended payment rate limits.

## V.  ASSIGNMENT OF ERRORS

62.    The Secretary's application of the blended payment rate limits to deny reimbursement for the plaintiff hospitals' full reasonable costs of services furnished to Medicare outpatients on or after January 1, 1999 and before August 1, 2000, should be set aside pursuant to 5 U.S.C. § 706 because it exceeds the Secretary's statutory authority, and it is contrary to law,

arbitrary, capricious, unsupported by substantial evidence, and otherwise not in accordance with law:

        A.     The Secretary's application of the blended payment rate limits to determine Medicare reimbursement for services furnished to Medicare outpatients during the period at issue violates Congress's statutory command in BBA Section 4523(d) that the blended payment rate limits shall not apply to services furnished after 1998.

        B.     Congressional intent as expressed in the plain text of BBA Section 4523(d) trumps the Secretary's perception of congressional purpose in connection with the Secretary's delay in implementing the prospective payment system for hospital outpatient services. *See* Natural Resources Defense Council v. U.S. Environmental Protection Agency, 805 F.2d 410 (D.C. Cir. 1986).

        C.     When an agency determines that a statute cannot be implemented as drafted, the agency "may deviate no further from the statute than is needed to protect congressional intent." Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060, 1068 (D.C. Cir. 1998).

        D.     Congress clearly intended to terminate the blended payment rate limits effective January 1, 1999, but to continue Medicare coverage for hospital outpatient services furnished after that date and to ensure that Medicare pays its fair share for those services, without cross-subsidization.

        E.     Congress twice amended the Medicare Act in order to extend the 5.8% and 10% cost reduction factors in the statutory definition of the reasonable cost of hospital outpatient services through the effective date of the Secretary's delayed implementation of the outpatient prospective payment system.

13

F.    The Secretary's application of the blended payment rates to hospital outpatient services furnished after 1998 and before these services were "designated" by the Secretary for payment under the outpatient prospective payment system is arbitrary and capricious because it is inconsistent with the agency's treatment of other services that were not designated for payment under the new system. The Secretary continues to reimburse hospitals on a reasonable cost basis for hospital outpatient services that are not designated for payment under the outpatient prospective payment system and has not explained why the services at issue here should be treated differently. The agency's inconsistent treatment of the services at issue, without rational explanation, is arbitrary and capricious. Transactive Corp. v. United States, 91 F.3d 232, 237 (D.C. Cir. 1996).

G.    The Secretary's application of the blended payment rate limits to the services at issue violates the plaintiff hospitals due process rights because the Secretary did not give the hospitals fair notice in advance as to how they would be reimbursed for the services furnished to Medicare outpatients from January 1, 1999 through July 30, 2000. See GranCare, Inc. v. Shalala, 93 F.Supp.2d 24, 31-32 (D.D.C. 2000).

H.    The application of the final rule published in the Federal Register on April 7, 2000, 65 Fed. Reg. 18434, 18489-90, to deny reimbursement for the reasonable cost of services previously furnished to Medicare outpatients constitutes the impermissible, retroactive application of a rule and is contrary to law. Bowen v. Georgetown University Hospital, 488 U.S. 204 (1988).

## VI. CLAIM FOR RELIEF

63.    The plaintiff hospitals request an Order:

A.    declaring invalid the Secretary's application of the blended payment rate limits

and his denial of Medicare reimbursement for the plaintiff hospitals' full reasonable costs of

services furnished to Medicare outpatients on or after January 1, 1999 and before August 1,

2000;

B.    requiring the Secretary promptly to reimburse the plaintiff hospitals for the full

amount of their reasonable costs of services furnished to Medicare outpatients on or after

January 1, 1999 and before August 1, 2000, plus interest calculated in accordance with 42 U.S.C.

§ 1395oo(f)(2);

C.    requiring the Secretary to pay legal fees and costs of suit incurred by the plaintiff

hospitals; and

D.    providing such other relief as the Court may consider appropriate.

Respectfully Submitted,

Christopher L. Crosswhite
D.C. Bar No. 450927
DUANE MORRIS LLP
505 9th Street, N.W., Suite 1000
Washington, DC  20004-2166
(202) 776-7846 (phone)
(202) 776-7801 (fax)

Joanne B. Erde, P.A.
DUANE MORRIS LLP
200 S. Biscayne Boulevard
Suite 3400
Miami, FL  33131
(305) 960-2218

Attorneys for Plaintiffs

Date:  June 2, 2008

C
08-942

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Vail Valley Medical Center, Kaleida Health        55556 | Michael O. Leavitt, Secretary, U.S. Department of Health and Human Services |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)          Eagle

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Duane Morris, LLP
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
202.776.7800

Case: 1:08-cv-00942
Assigned To : Urbina, Ricardo M.
Assign. Date : 6/2/2008
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE an x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 3 Federal Question (U.S. Government Not a Party)

◉ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE an x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

◉ **C.** *Administrative Agency Review*

☒ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*        **OR**        ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

③

| O  **G.** *Habeas Corpus/ 2255* | O  **H.** *Employment Discrimination* | O  **I.** *FOIA/PRIVACY ACT* | O  **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O  **K.** *Labor/ERISA (non-employment)* | O  **L.** *Other Civil Rights (non-employment)* | O  **M.** *Contract* | O  **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
⦿ 1 Original Proceeding  O 2 Removed from State Court  O 3 Remanded from Appellate Court  O 4 Reinstated or Reopened  O 5 Transferred from another district (specify)  O 6 Multi district Litigation  O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 U.S.C. sec. 1395oo(f); action for judicial review under the Medicare Act

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  **DEMAND $** _____  Check YES only if demanded in complaint  **JURY DEMAND:** YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☒  NO ☐  If yes, please complete related case form.

DATE  June 2, 2008  SIGNATURE OF ATTORNEY OF RECORD  *Christoph L. Crosswhite*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.